Filed 7/23/13  P. v. Gregory CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Defendant and Appellant, | E056652 |
| v. | (Super.Ct.No. FWV902815) |
| MARK GREGORY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Stephan G. Saleson, Judge.  Affirmed.

John Ward, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Charles C. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Mark Gregory is serving a five-year prison term for purchasing a car with fraudulent documents and an invalid check.  Defendant argues the trial court should

1

have granted his motion for a mistrial because jurors heard a partially redacted audio tape recording of him admitting to the above, but during which the investigating officer stated "I know a little bit about some other stuff that you have done in the past . . . ." As discussed below, the trial court did not abuse its discretion when it found that this vague comment was not significant enough in the context of the trial to alert the jury that defendant had prior convictions for theft.

## FACTS AND PROCEDURE

On June 4, 2009, defendant went to a used car dealership and met with a salesperson about purchasing a car. Defendant gave the dealership a check for the down payment in the amount of $1,474.78, along with a credit application. He also submitted a copy of his phone bill and drivers license. The next day he returned with a pay stub as proof of income. The credit application was approved. On June 13, defendant signed a retail installment contract, completed the transaction and took possession of the car. The amount to be paid for the car was $19,328.

Defendant did not make any payments on the car. The check defendant wrote for the down payment was returned by the bank unpaid because the account had been closed in September 2008.

An investigator with the California Highway Patrol arrested defendant on September 9, 2009. After the investigator obtained a *Miranda*[1] waiver from defendant, the investigator interviewed defendant for about 45 minutes. During the interview, which

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436.

2

was audio recorded and later played for the jury, defendant admitted the following: he knew the bank account upon which he had written the down payment check had been closed for some time; the company he had listed as his employer had gone out of business in the summer of 2008; he altered the dates on the pay stub to make it appear that he was currently employed. Defendant signed a written statement confirming these facts, and that he had not made any payments on the car.

On November 2, 2010, the People filed a second amended information charging defendant with fraudulently delivering a check without sufficient funds (Pen. Code, former § 476a, subd. (a))[2] and grand theft auto (§ 487, subd. (d)(1)). The People further alleged that defendant was released from custody on bail or his own recognizance at the time of these crimes (§ 12022.1).

On November 15, 2010, a jury found defendant guilty as charged. Also on that date, the trial court found the allegations to be true.

On June 29, 2012, the trial court sentenced defendant to the upper term of three years on the fraud charge plus two years for the release from custody enhancement, for a total of five years in prison. The two-year term for auto theft was to run concurrently, and the sentence for the second enhancement was stayed pursuant to section 654. This appeal followed.

---

[2] All section references are to the Penal Code unless otherwise indicated.

DISCUSSION

During a hearing on pre-trial motions, the trial court ruled that, unless defendant elected to testify, the jury was not to hear about defendant's prior theft-related convictions. The court ordered the People to redact any such references from the audio tape of defendant's interview from September 9, 2009.

The audio tape of the interview was played for the jury. A transcript of the audio tape was introduced into evidence. After the tape was played for the jury, defense counsel moved for a mistrial because the following statements by the investigator were not redacted from the audio tape, although they were redacted from the transcript:

> "And I know a little bit about some other stuff that you have done in the past and you gotta understand."

> "I didn't just show up to just show up."

Defendant argued that "the inference is here that Mr. Gregory has had prior conduct, prior bad acts and possible prior bad conduct involving CarMax because the officer does state in the lines prior to the ones that have been redacted, he knows a little bit about him. . . . There's references throughout the transcript that the jury can infer that this isn't the first time Mr. Gregory has committed this offense with CarMax."

The trial court ruled that the two statements were not substantially prejudicial and declined to grant a mistrial. The court commented that "I think it's open to a lot of different interpretation . . . ." The court also noted that the audio tape was not "the easiest tape to follow by listening to it in terms of the quality and clarity," and so declined to

4

give a curative instruction because it believed this would call "undue attention" to the statements.

"A trial court should grant a motion for mistrial 'only when "'a party's chances of receiving a fair trial have been irreparably damaged'"' [citation], that is, if it is 'apprised of prejudice that it judges incurable by admonition or instruction' [citation]. 'Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions.' [Citation.] Accordingly, we review a trial court's ruling on a motion for mistrial for abuse of discretion. [Citation.]" (*People v. Avila* (2006) 38 Cal.4th 491, 573 (*Avila*).)

Here, the trial court did not abuse its discretion when it ruled that the two statements by the investigator did not irreparably damage defendant's chance of receiving a fair trial. First, the statements were vague, and as the court pointed out, were open to various interpretations. Even the reference to "other stuff you have done" would not have led the jury to believe defendant had prior theft convictions. Second, as the People argue, this reference was isolated and brief and made in the context of a low-quality audio recording of a 45-minute interview, during which defendant admitted to the elements of the charged offenses, in the midst of three days of testimony from six witnesses, and the comments were not in the transcript of the recording. Just as in *People v. Bolden* (2002) 29 Cal.4th 515, in which our Supreme Court held that a witness' brief reference to a parole office in connection with obtaining the defendant's address did not allow a reasonable juror to infer that defendant had served time in prison for a felony, this brief reference to "other stuff you have done" was not significant in the context of this

5

trial, in that a reasonable juror would not infer from this comment that defendant had prior theft convictions.

The trial court did not abuse its discretion when it declined to grant a mistrial based on these vague comments.

## DISPOSITION

The conviction is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.


We concur:

HOLLENHORST
J.

MILLER
J.

6